**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ROSA NEGRA PROPERTIES, LLC,<br><br>Plaintiff,<br>v.<br><br>KAR PROPERTIES, LLC, and SHAHAB KARMELY, an individual,<br><br>Defendants. | Case No. |

**COMPLAINT**

Plaintiff, ROSA NEGRA PROPERTIES, LLC ("Rosa Negra" or "Purchaser") sues Defendants, KAR PROPERTIES, LLC, ("KAR Properties") and SHAHAB KARMELY ("Karmely") and in support thereof alleges the following:

**PARTIES, JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this dispute is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest, costs and reasonable attorneys' fees.

2. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and the Property subject to the dispute is located in this district.

3. Plaintiff Rosa Negra is a Limited Liability Company organized under the laws of the State of Florida with its principal place of business located in Miami, Florida. The citizenship of each member is as follows:

Luis Martinez, a citizen of the United States residing in the State of Florida.

Jose Antonio De Anda Turati, a citizen of Mexico residing in Mexico City.

Ricardo Vega Serrador, a citizen of Mexico and Spain residing in Mexico City.

4. Upon information and belief, Defendant KAR Properties, is a Limited Liability Company organized under the laws of the State of New York with its principal place of business located at 232 Madison Avenue, New York, New York. KAR Properties was the sole member and parent company of Tasal LLC ("Tasal" or "Seller"), a duly incorporated Florida Limited Liability Company, which has since been dissolved. Upon information and belief, the citizenship of KAR Properties' member is as follows:

Shahab Karmely, a citizen of the United States residing in the State of New York.

5. Upon information and belief, Defendant Shahab Karmely is the owner of KAR Properties, Chief Executive Officer of Tasal, trustee responsible for winding up Tasal's affairs following dissolution, and a resident of New York.

## GENERAL ALLEGATIONS

**The Sale Agreement**

6. On or about December 23, 2022, Purchaser Rosa Negra and Seller Tasal, a dissolved Limited Liability Company controlled by its parent organization KAR Properties and its CEO Shahab Karmely, entered into an Agreement of Sale (the "Sale Agreement") for the acquisition of commercial property located at 125, 129 and 131 NW South River Drive, Miami, Florida (the "Property").

7. Defendant Karmely acted as the key decision-maker in the Sale Agreement's negotiation and execution, which provided:

> 2.1 Seller agrees to sell and convey to Purchaser the Premises and Purchaser agrees to purchase from Seller the Premises subject to the terms and conditions contained in this Agreement.
>
> …
>
> 9.1 *Closing Date and Location*. Subject to the adjournments expressly allowed elsewhere in this Agreement, the closing of transfer of title to the Premises (the "Closing") shall take place, time being of the essence, on or before February 28, 2023; provided, however, Purchaser, upon written notice to Seller on or prior to February 21, 2023, shall be permitted to extend the Closing one time only until **March 28, 2023, time being of the essence**.

A true and correct copy of the executed Sale Agreement is attached hereto as (Exhibit A) (emphasis added).

8. Section 13.1 of the Sale Agreement further stated:

> 13.1 *Broker*. Seller and Purchaser represent to each other that no party has dealt with any broker or real estate consultant in connection with the transaction contemplated by this Agreement. Seller and Purchaser shall indemnify and hold the other free and harmless from and against any liabilities, damages, costs or expenses (including, but not limited to, reasonable attorneys' fees and disbursements) suffered by the indemnified party arising from a misrepresentation or a breach of any covenant made by the indemnifying party pursuant to this Section. The provisions of this Section shall survive the Closing or termination of this Agreement.

*Id*.

9. The Sale Agreement was signed by all parties and contained express representations and warranties, including Section 13.1, that neither Purchaser nor Seller had dealt with brokers or real estate consultants in connection with the transaction.

10. Section 13.1 notably provided that should there be a misrepresentation contained in Section 13.1, the misrepresenting party shall indemnify the innocent party for any liabilities, damages, costs or expenses (including, but not limited to, reasonable attorneys' fees and disbursements) suffered by the innocent party that arises from the misrepresentation.

11. Finally, Section 13.1 further provided that the provision shall survive the closing or termination of the Sale Agreement.

12. Section 13.1 was a material term of the Sale Agreement intended to avoid potential broker claims and associated liabilities.

**The Indemnity Agreement**

13. At Closing on or about March 29, 2023, Seller Tasal, under the control of KAR Properties and Karmely, presented Rosa Negra an additional indemnity agreement (the "Indemnity Agreement") contending for the first time that it would not proceed with the transaction in conformity with the Sale Agreement unless Rosa Negra agreed to indemnify Tasal against any claims or demands that had recently been made by certain brokers, including Sterling Equity Realty, LLC ("Sterling"), and Fortune International Realty, LLC ("Fortune"). The indemnity agreement also required personal indemnities from Rosa Negra's principals, namely, Ricardo Vega Serrador and Jose Antonio De Anda Turati.

14. Specifically, Paragraph (D) of the Indemnity Agreement stated:

> D. **As an inducement for Seller to proceed with the Transaction**, Indemnitors have agreed to Indemnify, defend and hold harmless the Seller from and against any and all claims and demands asserted by the Brokers or any other real estate broker, agent, finder or other person or entity seeking any commission or payment of any kind in connection with the Transaction, all in accordance with and subject to the terms and conditions herein. All capitalized terms not defined herein shall have the meanings ascribed to them in the Purchase Agreement.

A true and correct copy of the executed Indemnity Agreement is attached hereto as (Exhibit B) (emphasis added).

15. Specifically, Karmely personally informed Mr. Turati prior to execution of the Indemnity Agreement that Tasal had not been involved with any broker with respect to the Property. Karmely stated that because he had been notified of potential claims by Fortune and

Sterling, which he deemed to be without merit, the Indemnity Agreement was required in order for him to proceed with the sale in accord with his pre-existing contractual obligation.

16. However, this representation by Karmely was false as he had used Fortune's efforts on the Property since about 2020 pursuant to an open listing agreement and had been dealing with Fortune continuously during which time Fortune actively marketed the Property. Karmely knew his representations were in fact false as he had been personally involved with Fortune and its principal, Wolfgang Herz, in preparation of marketing brochures of the Property and had even demanded that Fortune procure an offer to purchase the Property for no less than $15 million dollars.

17. Despite the involvement of Fortune, Karmely concealed these facts from Rosa Negra, contending that no brokers were involved, and demanded the Indemnity Agreement as a condition of closing.

18. In direct reliance on the material representations made by Karmely, Rosa Negra executed the Indemnity Agreement assured that any claims from Sterling and Fortune were entirely without merit and readily defeatable.

19. The parties then signed the remaining closing documents on or about March 29, 2023.

**The Sterling/Fortune Litigation**

20. On October 9, 2023, Sterling brought suit against Rosa Negra Properties, LLC, the Purchaser, in Florida state court (Case No. 2023-024286-CA-01) naming Rosa Negra and Tasal as co-defendants.

21. Sterling's complaint asserted claims for quantum meruit, unjust enrichment, and tortious interference with a business contract, based chiefly on the allegation that Sterling provided

brokerage services facilitating the sale of the Property, thereby entitling it to a brokerage commission.

22. Specifically, Sterling alleged that it had entered into an agreement with Fortune, the Seller's agent throughout the transaction, under which the two brokerages would cooperate to facilitate the sale and split a commission to be paid by the Seller upon the transaction's successful closing. Sterling had in fact submitted a proposed Letter of Intent ("LOI") to Fortune, as Seller's agent, whereby Ricardo Vega offered to purchase the Property for $15 million dollars which had been the asking price demanded by Defendant Karmely. Seller never responded to the proposed LOI, the offer expired by its own terms, and the LOI was never executed by the Seller. Seller never responded to Fortune's own requests for status on the LOI. Indeed, Defendant Karmely simply ignored the inquiries from its own broker, Fortune, to then sell the Property to an investor with Plaintiff seven months later on the express representation that it had not dealt with any broker. In truth and fact, Defendant Karmely had been in continuous and frequent communication with Fortune and its principal, Wolfgang Herz, for two years prior.

**Defendants Knowingly Concealed Dealings with Fortune in Order to Persuade Plaintiff to Sign the Indemnity Agreement.**

23. Fortune subsequently filed a counterclaim against both Rosa Negra and Tasal, seeking commission fees and asserting its involvement in the transaction (the Sterling action and the Fortune third-party counterclaim will hereafter collectively be referred to as the "Sterling/Fortune Litigation").

24. During the course of litigation, evidence emerged revealing that Fortune had in fact been used by the Seller as its broker and that Karmely had continual communications with Fortune regarding their efforts to procure a buyer for the Property.

25. Specifically, Fortune provided evidence showing it had been marketing the Property with the Seller's consent and input in the marketing materials as early as 2020, and that Seller, specifically Karmely, had been in direct communication with Fortune's agent, Wolfgang Herz, wherein Karmely demands that he procure him a buyer for the Property at a minimum $15 million dollar price.

26. The evidence established that Defendants' knowledge of broker involvement existed specifically at the time of the Sale Agreement's execution, but this information was deliberately withheld from Rosa Negra.

27. Instead of disclosing their dealings, Defendants doubled down, affirmatively misrepresenting that no brokers were involved and maintaining this false narrative leading up to inducement of the Indemnity Agreement.

**Plaintiff Suffers from Double Defense Expenses and Financial Burden.**

28. As a direct and proximate result of Defendants' wrongful conduct, Rosa Negra has suffered significant financial harm. This includes substantial legal fees and defense costs incurred in defending itself against claims by Sterling and Fortune.

29. Additionally, Rosa Negra was compelled under the Indemnity Agreement to cover Tasal's separate legal fees and expenses, further exacerbating the financial burden caused by Defendants' misrepresentations.

30. All conditions precedent to the relief demand have been satisfied, have occurred, or have otherwise been excused.

31. Rosa Negra has retained the services of undersigned counsel and has agreed to pay them a reasonable fee for their services.

## CAUSES OF ACTION

## COUNT I: BREACH OF CONTRACT

(*Misrepresentation in Sale Agreement*)

32. Plaintiff Rosa Negra incorporates and restates the allegations in paragraphs 1 – 31 above as if fully set forth herein.

33. Broker involvement was a material term of the Sale Agreement.

34. Defendants falsely represented to Plaintiff that no brokers or real estate consultants were involved in connection with the transaction in question.

35. Defendants knew the representation was false because Defendants had used Fortune to market the Property and find it a buyer for a specified dollar amount.

36. Defendants knew of the representation's falsity at the time of the Sale Agreement's execution.

37. Defendants breached the Sale Agreement.

38. As a result of Defendants' breach, Plaintiff has suffered substantial financial harm.

WHEREFORE, Plaintiff seeks entry of judgment in Plaintiff's favor and against Defendants KAR Properties, LLC and Shahab Karmely for the following:

(1) Compensatory damages including prejudgment interest for financial harm directly caused by false misrepresentations in the Sale Agreement, such as legal fees and defense costs associated with brokers claims;

(2) Consequential damages resulting from Plaintiff's reliance on the false misrepresentations in the Sale Agreement, including payments made under the subsequent Indemnity Agreement;

(3) Costs of suit;

(4) Attorney's fees; and

Any and all other relief the Court deems just and proper.

**COUNT II: DECLARATORY JUDGMENT**

(*Indemnity Agreement Void for Lack of Consideration*)

39. Plaintiff Rosa Negra incorporates and restates the allegations in paragraphs 1 – 31 above as if fully set forth herein.

40. This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

41. The Indemnity Agreement was first presented to Plaintiff at the Closing of the Sale Agreement, which expressly stated that time was of the essence.

42. Pursuant to the Sale Agreement, Seller had a pre-existing contractual duty to close the transaction.

43. Defendants improperly conditioned the pre-existing contractual duty to proceed with the transaction on Plaintiff signing the Indemnity Agreement.

44. In addition to failing to provide any new consideration to the Plaintiff, the Indemnity Agreement similarly offered no consideration of any kind to the other individual signatories, including Rosa Negra's principals, Ricardo Vega Serrador and Jose Antonio De Anda Turati. It created obligations for these signatories without granting them any reciprocal value, rights, or benefits.

45. The circumstances are such that there is a substantial controversy as to whether a valid indemnification agreement exists among the parties.

46. The matter is of sufficient immediacy as Plaintiff continues to incur Tasal's separate legal fees and expenses associated with the brokers' claims in addition to its own.

47. The requested declaratory judgment will clarify and settle the legal relations in issue and afford relief from the uncertainty giving rise to this proceeding.

WHEREFORE, Plaintiff seeks a declaratory judgment that the Indemnity Agreement is void for lack of consideration; and

Any and all other relief the Court deems just and proper.

**COUNT III: FRAUDULENT INDUCEMENT**
(*Indemnity Agreement*)

48. Plaintiff Rosa Negra incorporates and restates the allegations in paragraphs 1 – 31 above as if fully set forth herein.

49. Defendants, knowing the falsity of their representation, represented to Plaintiff that "no party has dealt with any broker or real estate consultant in connection with the transaction" (Sale Agreement, Section 13.1), despite their dealings with Fortune.

50. The Indemnity Agreement was first presented to Plaintiff at the Closing of the Sale Agreement, which expressly stated that time was of the essence.

51. Defendants, knowing the falsity of their representation, represented to Jose De Anda Turati personally, at Closing and in face of the Indemnity Agreement, that Tasal had not dealt with any broker with respect to the Property, despite their substantial dealings with Fortune.

52. Defendants made this false statement at the eleventh hour with the intent to induce Plaintiff to enter into the Indemnity Agreement, notwithstanding their pre-existing contractual duty to close the transaction.

53. Plaintiff reasonably relied on the representation when entering into the Indemnity Agreement. The representation made by Defendant Karmely that no broker had been involved was in fact consistent with the representation in the Sale Agreement to the same effect. Plaintiff therefore had no reason to believe that Defendant Karmely's representation was in fact false until

discovery in the Sterling/Fortune Litigation revealed the continuous and substantial dealings between Defendants and their broker, Fortune.

54. As a result of this fraudulent inducement, Plaintiff suffered significant financial harm, including covering Tasal's legal fees and additional defense costs.

WHEREFORE, Plaintiff seeks entry of judgment in Plaintiff's favor and against Defendants KAR Properties, LLC and Shahab Karmely for the following:

(1) Rescission of the Indemnity Agreement;

(2) Restitution of all amounts paid or incurred under the Indemnity Agreement;

(3) Costs of suit;

(4) Attorneys' fees; and

Any and all other relief the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury on all claims and causes of action so triable.

Dated: January 16, 2025

Respectfully Submitted,

**CAREY RODRIGUEZ, LLP**
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Fax: (305) 372-7475

By: */s/ Helia Dehghani*

Juan J. Rodriguez (FBN 613843)
Email: jrodriguez@careyrodriguez.com
Secondary: jlleo@careyrodriguez.com
Helia Dehghani (FBN 1058453)
Email: hdehghani@careyrodriguez.com
Secondary: service@careyrodriguez.com

*Attorneys for Rosa Negra Properties, LLC*